## J. J. GILLENWATERS v. CHAPMAN DRUG CO. and J. J. GIL- LENWATERS v. CHAPMAN DRUG CO.

Eastern Section. July 25, 1925.

No petition for Certiorari was filed.

1. **Sales.** Under conditional sales contract vendee may waive both advertisement and sale but not the advertisement alone.

The conditional sales act does not permit the waiving of the advertisement alone but after default the vendee may waive both the advertisement and sale.

2. **Sales. Conditional sales. Contract held replaced by a new contract.**

In an action to recover the purchase money paid on a soda fountain because the fountain was not advertised for sale as required by law held that the evidence showed that the parties had made a new contract which took the place of the conditional sales contract.

Appeal in Error from Circuit Court, Knox County; Hon. A. C. Grimm, Judge.

Judgment affirmed.

C. M. Parks and Robert D. Taylor, of Knoxville, for plaintiff in error.

A. J. Graves, of Knoxville, for defendant in error.

SNODGRASS, J. These causes were consolidated and heard together in the court below.

The Chapman Drug Company instituted a suit before a Justice of the Peace for fifty dollars, which it claimed that the defendant J. J. Gillenwaters owed it by virtue of a contract it made with Mr. Gillenwaters with reference to a soda fountain. Mr. Gillenwaters had purchased the soda fountain from the Drug Company previous to that time, at the price of $515, under a contract as follows:

"$515.                                                    July 20, 1922.

For value received I promise to pay to the Chapman Drug Company, five hundred fifteen dollars at the rate of $25 per month beginning August 20, 1922.

This note covers one six foot combination soda fountain including carbonator and all connections thereto attached sold to the Lyle Drug Company on July 12, 1922, title of which remains in the name of the Chapman Drug Company until this note with interest is fully paid.

If suit is instituted on this note I agree to pay 15% attorney fee and all cost in collection of same. This note to bear 6% interest from date.

Signed.          . J. J. Gillenwaters."

It was agreed that there had been paid on this contract the sum of $275, and it was insisted on the part of the company that afterwards, and on or about the 1st of March, 192—, that Mr. Gillenwaters and the company agreed upon the settlement of the matter, upon terms that if Mr. Gillenwaters would pay the sum of $50 more, that the company would receive back the soda fountain and cancel the remainder of the indebtedness. That this was agreed to upon the part of Mr. Gillenwaters, and that thereupon the company sent and got the soda fountain, and Mr. Gillenwaters, failing to pay the $50, suit was brought to collect it.

Mr. Gillenwaters denies that this was the agreement. He says he made a proposition that the company take back the fountain and cancel the remainder of the indebtedness, but that the company refused to do this. He insists that the company reclaimed simply possession of the soda fountain, and then failed to advertise and sell it as required by the conditional sales law, but sold it at private sale, and therefore are liable to him for the amount that he paid them. He instituted a suit for this amount before the justice, claiming the sum of $345.

Both suits were heard and the justice gave the Chapman Drug Company a judgment for $50 and all costs, from which the defendant Gillenwaters prayed and obtained an appeal to the circuit court.

In the other case the justice gave judgment in favor of the defendant and against the plaintiff, and directed execution to issue for the costs.

From this the plaintiff Gillenwaters also appealed and, as stated, the two causes were by agreement consolidated and heard together before His Honor, Judge Grimm, who gave the plaintiff Drug Company a judgment against Gillenwaters for $50 in their case, and dismissed the suit of Gillenwaters against the company; and as defendant in the one case and plaintiff in the other, Mr. Gillenwaters has again appealed to this court and assigned errors.

A motion is made to affirm the judgment in each case because it is said the bill of exceptions was not filed within the time allowed. The record shows that on overruling the motion for a new trial, the defendant was allowed ten days to file his bill of exceptions. This order is shown to have been made on Saturday, October 18th, and the record shows the bill of exceptions to have been filed, October 28, 1924. Excluding the day on which the order was made, and counting the day on which the bill of exceptions was filed brings it within the ten days, and this motion is overruled.

The assignment is:

"The court erred in determining the issue in this case to be whether or not J. J. Gillenwaters and the Chapman Drug

Company entered into a contract whereby the Chapman Drug Company was to repossess the property for an additional consideration of fifty dollars, and in sustaining the theory of the defendant company that such an alleged agreement relieved the Chapman Drug Company of complying with the provisions of the conditional sales laws of Tennessee, when the undisputed proof conclusively showed that this alleged agreement was made March 1, 1924, and the property taken back March 10, 1924—the same not being in the possession of the defendant company at the time of the agreement, and in holding and decreeing that the waiver of the public sale and advertisement could be made before the Chapman Drug Company had regained possession of the property.''

The question therefore to be determined is: Did the contract made after the conditional sale of the soda fountain between the Chapman Drug Company and Mr. Gillenwaters in reference to said fountain settle the matters between them, and, if so, was there any occasion for any public sale of the fountain, or any obligation to expose the property for sale under the statute.

On the trial of the case J. C. Hickman was introduced on the part of the Drug Company. He testified as follows:

"My name is J. C. Hickman, and I am employed as secretary and treasurer of Chapman Drug Co. I have been with that company for thirty-three years.

"On July 20, 1922, Mr. Gillenwaters bought a soda fountain from us.''

Q. "State whether or not you had an agreement with Mr. Gillenwaters that if you would take back the soda fountain you would surrender that note upon the payment of $50.

A. "That was the agreement, yes sir. The note in the first place was payable $25 a month. Mr. Gillenwaters got very slow. On December 15, 1923, he paid $25, and then he lapsed for a considerable length of time, and he came to my office with his son Claud, and he says: 'I want you to take back that old fountain.' He says: 'It wont keep ice cream anyway, and I can't pay for it.' He says: 'They have been lawing me out there and got me about broke up.' I explained that we could not take back the fountain according to law, unless we replevied and advertised it, but I says: 'I will give you all the time you want; I don't want to replevy this fountain; you have let it run for nearly a year, but I will be glad to give you all the time you want.' He says 'no, I want to get it out of my hands; they have lawed me out there and got me about broke up, and I want to get it out of my hands;' and I had respect for his old age, and says: 'If I take it back I

will have to buy it back from you, and there is $340 on it, $340,' and I says: 'I will give it to you for $390, that is, you pay me $50 more and I will take it off your hands, and I will lose money on it at that, because from what you say it is practically useless, and will have to be worked over.' And his son Claud said: 'What about giving you $25?' I says: 'I will lose money on that,' and then Claud turned to Mr. Gillenwaters and says: 'Father, Mr. Hickman is treating you right;' he says: 'It wont keep ice cream.' Claud Gillenwaters said: 'Father, Hickman is treating you right.' That is what his son Claud said. He says: 'It wont keep ice cream, and we are not using it, and the thing to do is to get rid of it. He is treating you right, this man is making you a good proposition; you pay him $50 and let him take it back.' So I made the agreement with him and entered it on the back of the note that he was to pay me $50 on it. I did that partly because I had confidence in Mr. Gillenwaters' integrity, because I had been doing business with him a long time. After that, along in May sometime, I got a letter from Mr. Gillenwaters. I got the letter in May of this year. This transaction was on March 1st. That was when Mr. Gillenwaters came to my office, he and his son. This was March 1st of this year, and he insisted on me taking it back that day. Now I says: 'I can't do it. I can't take it off your hands. It is out there.' I remember I said that 'I will look after it;' I says: 'I will get it just as quick as I can,' and on the 9th day of the month I made a note on this account where I gave our shipping clerk instructions to go after it; that was on the 9th of March, and so on the 10th of March, the next day, they brought the fountain in; and it was the agreement that he was to pay us $390, and he paid us $340 on the account, leaving $50 still due.'' . . . ''We did take that soda fountain back that was out there, and I sold it. I didn't advertise it, or post notice of its sale, because I had an agreement not to. I sold it at a private sale. I will show you the transaction to the penny; there was owing on the fountain $340, and the interest on the note was $18.95. It cost $5 to go out there and get the fountain and bring it back. It cost $35 to tear it down and clean and repair the fountain and carbonator; for crating fountain and carbonator $15; sending an erecting engineer to Bull's Gap, including railroad fare and hotel, $27.50; that made it cost us exactly $441.45, and I sold it for $375, which made me lose exactly $66.45. I just keep a list of these items in cases where we take back fountains. We keep a list of what we pay, what it costs us to put them in shape and what we sell them for,

in order to keep up with our business. And if I had gotten a transfer company to have gone after it, it would have cost me $25 or $30.''

This was controverted, but sufficient of the evidence is quoted to show that there is proof to support the finding of the Circuit Judge, and the judgment will have to be affirmed, if the case does not fall within the authorities cited.

The plaintiff in error insists that notwithstanding the foregoing state of the proof the property should have been advertised and sold under the statute, and cites the case of Cowan v. Singer Mfg. Co., 92 Tenn., 376. In this case it was held:

"The transaction constitutes a conditional sale, and not a lease, where a sewing machine company contracts a machine to a customer for a stipulated price, to be paid in installments, delivering the machine with intent that it should be his upon payment of the price agreed upon, but retaining title to secure the payment thereof. And it is immaterial that the transaction be disguised by calling it a 'lease,' and providing that installments of purchase money shall be paid as rent. The substance, not the form of the transaction, will be regarded by the courts.''

In this case the plaintiff regained possession of the machine and appropriated it to its own use without advertisement and sale, under the idea that it was a lease, and not within the statute. The court held that the contract in effect was a conditional sale, and not a lease, and that therefore, under the statute, the original seller was liable to the·purchaser for the amount paid on the purchase. The case, therefore, is not in point.

The case of Russell v. Clinton Motor Co., 147 Tenn., 57, was where Russell, who had signed the notes to the company for the car, to which title had been retained, after default on the note, and while the car was already in possession of the company, signed a written agreement waiving public sale and agreeing that the company might sell at private sale, agreeing to pay the difference between the amount due on the car and the amount received at such private sale. The company sold the car at private sale, applied the amount received on the car and sued Russell for balance due on note. Russell filed his bill enjoining the suit, claiming, among other things, that the waiver of the public sale was made before the company got possession of the car. The court held, however, that this contention was not sustained; that at the time of waiver Russell was in default on the notes, and that the company had possession of the car. The agreement, therefore, was not in violation or emasculation of the statute. This case is not in point.

The case of Ward v. Sharp, 139 Tenn., 347, was where a minor purchased furniture under a conditional sale, and defaulted in one or more of the weekly payments. Thereupon the defendant reclaimed the furniture, with the plaintiff's consent, and sold it without making advertisement of the sale as required by law in such cases. However, the minor signed a written waiver of advertisement. The suit was brought to recover the $45 which had been paid by the minor on the furniture. The suit was sustained upon the ground that the agreement of waiver, without consideration and to the prejudice of the minor was void, and he was still entitled to claim the benefits of the statute accruing on failure to advertise. In this same case the court says:

"It is true that the act provides that the original seller and purchaser 'may at any time by agreement waive the sale provided in this act.' The act does not permit the waiving of the advertisement alone. It does not permit the waiving of the sale preliminary to default made. In other words, it does not permit such a provision to be contained in the contract of sale. Massilon Engine & Transfer Co. v. Wilkes, supra. The reason why the advertisement and sale may be together waived, and not the advertisement alone, is this: When the sale is waived by agreement between the parties, this necessarily means that the vendor takes the property back on some terms agreeable to the vendee; that is, there either must be a rescission in this form, or some kind of accord and satisfaction. In case the advertisement alone is waived, this means that the original vendor may put the property up at sale, and in case it fails to bring the balance due he can hold what is left unpaid as a debt against the original purchaser, the act providing that should the property at the sale fail to realize a sufficient sum to satisfy the claim of the seller, the balance still remaining due on the claim shall be and continue a valid legal indebtedness as against the purchaser. Permitting the waiver of the advertisement and a sale without advertisement would destroy the beneficent purposes of the act to protect the poor persons who usually buy property under conditional sales. . . . It was the intention of the act to protect these people, and the court had steadily upheld and given effect to that intention at all times."

Even if the case at bar were simply and primarily a waiver, it being after default and a waiver of both the advertisement and sale of the fountain, it would be authority sustaining the action of the Circuit Judge. But it is a case of a new contract, made long after the original conditional sale of the fountain, and after default, by which the Drug Company became the owner of the foun-

tain, and all of the original debt was cancelled except $50, which Gillenwaters, the plaintiff in error agreed to pay, and for which the Drug Company has no security.

There is nothing in this contract which contravenes in any way the conditional sales statute, and therefore the judgment of the circuit court is affirmed, with costs.

Portrum and Thompson, JJ., concur.